IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DIANA S. MCKAY                                                                                           PLAINTIFF

      V.                            CIVIL NO.  2:14-cv-02262-TLB-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                      DEFENDANT

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Plaintiff, Diana McKay, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background**

Plaintiff protectively filed her application for DIB on April 7, 2010, alleging disability since August 31, 2001, due to back problems, a torn rotator cuff, allergies, anemia, high blood pressure, high cholesterol, arthritis, foot problems, cataracts, and kidney stones. (Tr. 21, 385) For DIB purposes, Plaintiff's insured status expired on March 31, 2004. (Tr. 23, 385) An administrative hearing was held on August 3, 2011, at which Plaintiff appeared with counsel and testified. (Tr.117-155)

On August 17, 2011, the ALJ entered an unfavorable decision. (Tr. 162-171) Plaintiff requested review by the Appeals Council, which remanded the case on March 12, 2013. (Tr. 178-

180) A second administrative hearing was held on July 15, 2013, at which Plaintiff again appeared with counsel and testified. (Tr. 39-116)

By a written decision dated August 23, 2013, the ALJ found Plaintiff's degenerative disc disease of the cervical and lumbar spine, right shoulder joint disorder, osteoarthritis, and obesity were severe impairments. (Tr. 24) After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (Tr. 124) The ALJ then found Plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> The claimant is able to stand and/or walk for up to four hours during an eight-hour workday, occasionally climb ramps and stairs[,] but never climb ladders, ropes or scaffolds. She is able to occasionally balance, stoop, kneel, crouch and crawl. (Tr. 24)

With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform her past relevant work (PRW) as a human resources advisor. (Tr. 27-28) The ALJ concluded Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 28)

Plaintiff requested a review of the hearing decision by the Appeals Council, which denied the request on October 24, 2014. (Tr. 1-3) Subsequently, Plaintiff filed this action on December 18, 2014. (Doc. 1) Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 10, 12)

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond

examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light

of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

**III. Evidence Presented**

The evidence from the relevant time period shows Plaintiff established treatment for back pain with Dr. Anthony Capocelli in August of 2001 because her back interfered with her ability to walk, sit, and sleep. (Tr. 704-707) Dr. Capocelli initially diagnosed Plaintiff with a severe lumbar sprain, and a recurrent herniated disc. (Tr. 707) An MRI of Plaintiff's lumbar spine on August 30, 2001, showed a protruded disc and extruded fragments at the L5-S1 level. (Tr 508) When Plaintiff's pain did not respond to conservative treatment, Dr. Capocelli performed a lumbar spinal fusion on September 10, 2001. (Tr. 488-489 695)

Plaintiff's surgery was successful, although she developed neck pain with radiation in her neck and shoulders. (Tr. 681-682) At a follow-up in October 2001, Dr. Capocelli noted her recovery was going well, and prescribed six weeks of physical therapy. (Tr. 685) Physical therapy treatment notes show Plaintiff had some problems with pain after prolonged sitting, reduced active range of motion in her spine, and experienced shoulder pain with flexion and abduction during her treatment. (Tr. 712-715)

In December 2001, Dr. Capocelli stated, "post operatively, her back has done excellently," and noted x-rays showed stable post-operative changes, and Plaintiff's muscle strength, reflexes, and gait were normal. (Tr. 511, 681) He noted, however, Plaintiff continued to have neck pain with radiation, and suggested trying muscle relaxers, NSAIDs, and undergoing an MRI. (Tr. 681) An MRI of Plaintiff's cervical spine on December 15, 2001, showed a moderate C5-C6 disc bulge, foraminal stenosis, and a central left paracentral disc protrusion at the C6-C7 level. (Tr. 505, 680)

In January 2002, Plaintiff was discharged from physical therapy, although she continued to have shoulder pain. (Tr. 712) An MRI of Plaintiff's right shoulder on February 20, 2002, revealed mild degenerative changes, probable tendinitis, and a small amount of fluid in her joint, but the results indicated she did not have a rotator cuff or labral tear. (Tr. 506) She established care with Dr. Stephen Heim in March 2002, who diagnosed her with rotator cuff tendinitis, and administered a shoulder injection. (Tr. 548)

In May 2002, Plaintiff established primary care with Dr. Mohsen Keyashian, who noted Plaintiff was not experiencing depression or anxiety, had good strength in her extremities, and showed no spinal tenderness. (Tr. 545) He prescribed Ultracet for osteoarthritis, Dyazide for fluid retention, FiberCon for diarrhea, and Ambien for insomnia. (Tr. 547) Plaintiff saw Dr. Keyashian again on June 18, 2002, after undergoing a bone scan, which indicated she had osteopenia of the spine, but normal bone density in her hips. (Tr. 543) Dr. Keyashian noted Ambien and Dyazide has resolved Plaintiff's insomnia and fluid retention, Plaintiff's diarrhea was no longer a problem, and her osteoarthritic pain was better with Ultracet, although she was experiencing some numbness in her toes. (Tr. 543-544) On June 19, 2002, Plaintiff was also prescribed Evista for osteoporosis by her gynecologist. (Tr. 542)

At a follow-up on June 26, 2012, Dr. Heim performed a second injection because Plaintiff's shoulder responded well to the first injection. (Tr. 541)  According to Dr. Heim, "her strength [was] still good, [and] she ha[d] reasonable range of motion." (Tr. 541)

In September 2012, however, Dr. Heim diagnosed Plaintiff's shoulder as impingement syndrome, determined Plaintiff's shoulder had not improved enough from the shots, and recommended outpatient surgery. (Tr. 540) An acriomioplasty and joint resection was performed on

September 30, 2002. (Tr. 493) Following the surgery, Dr. Heim restricted Plaintiff to no heavy or repetitive lifting, but opined she "will do very nicely in the long run." (Tr. 539) At a follow-up in November 2002, he noted Plaintiff "shoulder [was] doing beautifully," and she had good range of motion and "very little pain," other than slight tenderness when sleeping. (Tr. 538)

Plaintiff saw Dr. Keyashian again in January 2003, who noted Plaintiff was treating her osteopenia with Evista and calcium, had completed a cycle of Cipro for kidney stones, and was taking Lipitor for hyperlipidemia, which she believed caused muscle soreness. (Tr. 536) He prescribed Ambien for insomnia, and noted Plaintiff's diarrhea was not a problem, the numbness in her toes had improved, and her right shoulder pain was resolved. (Tr. 537)

On June 2, 2010, Dr. Arthur Pirone, a non-examining consultant, submitted a physical RFC assessment, and opined that during the relevant time period Plaintiff could lift ten pounds frequently and twenty pounds occasionally; stand or walk about four hours in an eight hour workday; sit about six hours in an eight hour workday; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. (Tr. 566-572) Dr. Sharon Keith, a non-examining consultant, affirmed Dr. Pirone's assessment on November 3, 2010. (Tr. 599)

## IV. Discussion

Plaintiff believes the ALJ: (1) should have included additional severe impairments, (2) failed to evaluate Plaintiff's subjective complaints, (3) did not base the RFC assessment on substantial evidence, and (4) erred by finding Plaintiff could perform her past relevant work. (Doc. 10, pp. 8-13)

**A. Severe Impairments**

Plaintiff believes the ALJ should have included a sleeping disorder as a severe impairment. (Doc. 10, p. 8-9)

At step two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4); *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Bowen v. Yuckert*, 482 U.S. 137 (1987) (O'Connor, J., concurring). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that an impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page v. Astrue*, 484 F.3d at 1043-44.

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 404.1527.

The record does not establish Plaintiff's insomnia was a severe impairment. While Plaintiff complained of insomnia to her physicians, she reported her sleeping problems were resolved on Ambien. (Tr. 524, 529, 536-537, 546-547) After being prescribed Ambien in May 2002, she reported at a follow-up in June 2002 that Ambien worked well, and Dr. Keyashian noted her insomnia was stable. (Tr. 546-547, 543-544) Following the relevant time period, in December 2004, she reported she felt much better on Ambien, which she believed worked well and, along with Lexapro, helped her relax. (Tr. 529) In January 2006, she reported Ambien worked great, and Dr. Keyashian noted the "next day she has good energy and she does not feel tired." (Tr. 524)

The record indicates Plaintiff did not suffer work-related limitations from a sleeping disorder, the evidence shows her insomnia was treated by Ambien, and she was not prescribed a long-term sleep medication. Since her insomnia was amenable to treatment and controllable with medication, it was not severe. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011).

Accordingly, the ALJ's step two determination is based on substantial evidence.

### B. *Polaski Analysis*

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002)). An ALJ is required to consider all of the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medications; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (stating a court should not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should, "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ addressed the *Polaski* factors in the written decision, but partially discounted Plaintiff's allegations of disabling pain. The ALJ identified Plaintiff's relatively normal daily activities such as completing household chores, volunteering, exercising three times a week, and swimming in an arthritic pool as facts that were inconsistent with disabling pain. (Tr. 25) In her function report, Plaintiff stated she performed house and yard work, and her hobbies included sewing and ballroom dancing. (Tr. 118, 120) She also shared that she went to a gym three times a week, and often volunteered at a hospice center. (Tr. 120) At the hearing, Plaintiff testified her exercise included ballroom dancing, and, shortly after the expiration of her insured status, she began working 48 hour shifts at a girls shelter, which were not activities consistent with having disabling conditions. (Tr. 42-43, 68, 93-94, 120, 122, 375) While his discussion was brief, the ALJ identified valid reasons for discounting Plaintiff's claim of disabling conditions. *See e.g., Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).

Accordingly, the ALJ's credibility determination is based on substantial evidence.

**C. RFC**

Plaintiff believes the ALJ's RFC determination was "contrary to the evidence" as a whole because the ALJ should have included additional reaching, pushing, and pulling limitations to account for Plaintiff's shoulder impairment. (Doc. 10, pp. 9-11)

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect her RFC. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ addressed Plaintiff's shoulder impairment and surgery in the written decision. As the ALJ noted, Plaintiff's shoulder improved significantly after surgery, post-surgery exams showed she had good range of motion, and her only complaint was slight tenderness while sleeping. (Tr. 26) In November 2002, Dr. Heim opined her shoulder was "doing beautifully," and, in January 2003, her treating physician, Dr. Keyashian, noted her right shoulder pain was resolved. (Tr. 536-538)

Additionally, the record shows Plaintiff's back condition was not disabling following her back surgery. While an MRI in December of 2001 showed a moderate C5-C6 disc bulge, foraminal stenosis, and a central left paracentral disc protrusion and C6-C7, Plaintiff did not seek follow-up

treatment for her back condition. (Tr. 505, 680) Notes from May 2002 show Plaintiff had good strength in her extremities, and no spinal tenderness. (Tr. 545) Shortly after the relevant time period, in November 2004, her back condition was noted to be stable. (Tr. 530-531) Treatment notes from December 2004 indicate Plaintiff's spinal exam was normal, and she showed no symptoms of cervical discopathy. (Tr. 529)

In addition to Plaintiff's treatment notes, the ALJ's determination is also supported by the RFC assessments of the non-examining consultants, who opined Plaintiff could perform light work with postural and sitting/standing limitations. (Tr. 566-572, 599)

Based on the foregoing, the ALJ's RFC assessment is based on substantial evidence.

**D. Past Relevant Work**

Plaintiff's final argument is the ALJ did not ascertain the specific job demands of her past work. (Doc. 10, pp. 11-13) At step four, the burden of persuasion in on the claimant. *Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004). While VE testimony at step four is not necessary to determine if a claimant can perform her past work, the ALJ may consider VE testimony. *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007). A VE's response to a properly posed hypothetical question at step four provides substantial evidence to support the ALJ's finding that an individual can perform her past work. *Depover v. Barnhart*, 349 F.3d 563, 568 (8th Cir. 2003).

At the hearing, Plaintiff testified about the characteristics of her past relevant work at Wal-Mart. (Tr. 49-61) The ALJ then asked the VE about the exertional demands and skill requirements of Plaintiff's work at the company. (Tr. 62) The VE initially classified Plaintiff's position as a hybrid role of personnel manager at the light-medium, highly skilled level, and training representative at the medium, skilled level. (Tr. 62-63) Plaintiff's responsibilities at her past position were then

further developed, and, in response, the VE testified Plaintiff's position was better classified as being a human resources advisor at the light, skilled level. (Tr. 105-107) By developing Plaintiff's testimony and consulting a VE, the ALJ sufficiently identified the requirements of Plaintiff's past relevant work.  *Eichelberger*, 390 F.3d at 592.

The ALJ then posed a hypothetical question, consistent with the RFC determination to the VE. (Tr. 108) In response, the VE testified the hypothetical person could perform Plaintiff's past relevant work as a human resources advisor. (Tr. 108) Such testimony, in response to a properly phrased hypothetical question, is substantial evidence. *Depover,* 349 F.3d at 568.

**V. Conclusion**

For the reasons and upon the authorities discussed above, the undersigned recommends affirming the ALJ's decision and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of November, 2015.

/s/   *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE